UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOY GALLAGHER,<br>      Plaintiff, | :<br>:<br>: |
| v. | :     3:10-cv-1270 (CFD) |
| | : |
| TOWN OF FAIRFIELD,<br>FAIRFIELD BOARD OF EDUCATION,<br>ANN CLARK, DEBORAH JACKSON,<br>JOHN BOYLE, THOMAS CULLEN, and<br>SALVATORE MORABITO,<br>      Defendants. | :<br>:<br>:<br>:<br>:<br>: |

## RULING ON MOTION TO DISMISS

The plaintiff, Joy Gallagher, brought this action against the Town of Fairfield ("Town"), Fairfield Board of Education ("Board"), and, in their individual and official capacities, Ann Clark (Fairfield's Superintendent of Schools), Deborah Jackson (Principal of North Stratfield Elementary School), John Boyle (Fairfield's Deputy Superintendent of Schools), Thomas Cullen (Director of Operations), and Salvatore Morabito (Director of Safety, Security, and Construction) (collectively, the "defendants"), alleging disability discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201 et seq., disability discrimination under the Rehabilitation Act, 42 U.S.C. § 791 et seq., a violation of her rights to equal protection and her First Amendment rights pursuant to 42 U.S.C. § 1983, and various Connecticut statutory and common law claims. The defendants now move to dismiss several of Gallagher's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motion is granted in part and denied in part.

**I.     Factual Background**[1]

Since September 1983, Joy Gallagher has been employed as an art teacher at the North Stratfield Elementary School in Fairfield, Connecticut. During the summer of 2007, the Fairfield Board of Education erected a wall that split Gallagher's classroom into two rooms. Gallagher's new classroom was reduced considerably in size as a result of the project, and had no operable windows, no exterior door, and no mechanical air conditioning or ventilation. Gallagher allegedly expressed her concerns with the air quality and safety of her new classroom. Parents of students also allegedly voiced their concerns to the defendants.

When school resumed in the fall of 2007, Gallagher continued to complain about the conditions in her new classroom. Gallagher claimed that due to the poor ventilation in the room, there were strong odors from the construction paints, sealants, and adhesives. In September and October 2007, Gallagher also reported water damage to the ceiling tiles around the classroom's skylight. Allegedly due to exposure to the odors, dust, and mold from her classroom, Gallagher became ill with asthma. A "Ms. Fitzgerald," the Assistant Superintendent of Schools in Fairfield, subsequently evacuated the classroom until repairs could be made; however, Gallagher still had to use the room every morning and afternoon to load and unload art supplies for her classes in other classrooms.

Due to her illness, Gallagher was placed on medical leave from October 29, 2007, to January 7, 2008. Gallagher also filed a workers' compensation claim in December 2007. An

---

[1] These facts are taken from the allegations of the plaintiffs' complaint. The allegations must be assumed true for the purpose of resolving the motion to dismiss.

independent medical examination requested by the Board allegedly confirmed the causal connection between Gallagher's illness and the classroom.

Pursuant to her doctor's orders, Gallagher requested that, before she returned to work, an air filter be placed in the classroom and that the water damage to the ceiling be remedied. On January 7, 2008, Gallagher returned to work. An air filter had been put into the classroom, but the water damage had not yet been addressed. On January 9, 2008, while Gallagher was teaching a class in the classroom, workers removed the skylight, causing the release of particles and dust into the room. Gallagher allegedly suffered an immediate and severe allergic reaction and left school.

Gallagher returned to work for a meeting on January 22, 2008, and resumed teaching in her classroom the following day. Gallagher allegedly continued to suffer from, among other things, fatigue and headaches, and had difficulty breathing. After running a high fever on February 7, 2008, Gallagher's doctor removed her from work for the remainder of the 2007–08 school year.

In August 2008, Gallagher returned to work. Gallagher's health allegedly continued to suffer but was improved through medication. In April 2009, Gallagher discovered that the air filter put into her classroom in January was recycled from another school, which had since been demolished due to mold problems. The allegedly contaminated air filter in Gallagher's classroom was then replaced with an air filter of inferior quality, Gallagher asserts. Gallagher then requested that a specific type of air filter and a "hepa hood" be installed.[2]

---

[2] Gallagher allegedly received these items in June 2010.

In August 2009, Gallagher was removed from work by her doctor for the entire 2009–10 school year due to her illness. On February 20, 2010, Gallagher was diagnosed with multiple myeloma, an environmentally induced disease. Gallagher has not returned to work since February 2010 and has brought this suit alleging disability discrimination, violation of her constitutional rights, and various Connecticut statutory and common law claims.

**II.     Discussion**

   A.     Motion to Dismiss Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

   B.     Counts One and Two: ADA

In Counts One and Two, Gallagher alleges disability discrimination and retaliation, respectively, against the Town, the Board, and the individual defendants in their official capacity, in violation of Title II of the ADA. The defendants have moved to dismiss these claims,

claiming that employment discrimination claims are only actionable under Title I of the ADA, not Title II.

Title I of the ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Individual plaintiffs routinely bring claims against their employers for disability discrimination and retaliation pursuant to Title I of the ADA.[3] See, e.g., Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001); Desmond v. Yale-New Haven Hosp., Inc., 738 F. Supp. 2d 331 (D. Conn. 2010). In contrast, Title II of the ADA addresses the discriminatory exclusion of disabled individuals from participation in "services, programs, or activities of a public entity." 42 U.S.C. § 12132.

The U.S. Court of Appeals for the Second Circuit has not yet ruled whether employment discrimination claims are actionable under Title II of the ADA. See Brown v. Connecticut, No. 3:08cv1478, 2010 WL 2220580, at *18 (D. Conn. May 27, 2010) ("[D]espite multiple opportunities to clarify the law, the Second Circuit has not yet decided whether claims of discrimination in employment are cognizable under Title II of the ADA."). But the recent trend within the District of Connecticut, especially since the U.S. Supreme Court's decision in Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), appears to hold that Title II does not apply to employment claims. See id. at 18–19; see also Cormier v. City of Meriden, No. CIVA.3:03CV1819, 2004 WL 2377079, at *1–9 (D. Conn. Sept. 30, 2004)

---

[3] Gallagher has not brought a Title I claim, apparently because she did not exhaust her administrative remedies, as required by Title I.

(acknowledging the split in the U.S. Circuit Courts on the issue of whether Title II covers employment discrimination claims in the public employment context, and concluding, based on the court's independent analysis, that employment discrimination claims are not actionable under Title II). Those decisions are principally based on indications in Garrett that the Supreme Court would not construe Title II to apply to employment discrimination claims. This Court agrees with that prediction. Furthermore, allowing employment discrimination claims to be brought pursuant to Title II enables a plaintiff to circumvent the important administrative exhaustion requirements of Title I. See Sworn v. W. N.Y. Children's Psychiatric Ctr., 269 F. Supp. 2d 152, 157 n.1 (S.D.N.Y. 2003). Thus, Gallagher's claims in Counts One and Two for employment discrimination and retaliation in violation of Title II of the ADA are not actionable, and the defendants' motion to dismiss those counts is granted.

    C.    Counts Three and Four: Rehabilitation Act

In Counts Three and Four, Gallagher claims discrimination and retaliation for failure to accommodate her disability in violation of the Rehabilitation Act, 29 U.S.C. § 794(a).

The defendants claim that Gallagher was employed by the Fairfield Board of Education, not the Town of Fairfield, and therefore argue that the Town was not Gallagher's "employer" for purposes of her Rehabilitation Act claims. At oral argument on the defendants' motion to dismiss, Gallagher conceded that the Town is not her employer and is not liable for discrimination pursuant to the Rehabilitation Act. Accordingly, with respect to the Town of Fairfield, the defendants' motion to dismiss Counts Three and Four is granted.

The defendants also move to dismiss Counts Three and Four against the individual defendants in their individual and official capacities. First, courts have held, and Gallagher

concedes, that individuals cannot be held liable under section 504 of the Rehabilitation Act, as amended and codified at 29 U.S.C. § 794, in their individual capacities. See M.K. ex rel. Mrs. K. v. Sergi, 554 F. Supp. 2d 201, 230 (D. Conn. 2008) ("[T]here is no individual liability for money damages under Title II of the ADA or § 504 of the Rehabilitation Act."); Mascetti v. Zozulin, No. 3:09-cv-963, 2010 WL 1644572, at *3 (D. Conn. Apr. 20, 2010) ("[A] claim pursuant to Section 504 cannot be asserted against private individuals in their individual capacities."). Additionally, to the extent that claims under the Rehabilitation Act against individuals in their official capacities are actionable,[4] courts have held that where a plaintiff asserts claims under the Rehabilitation Act against a governmental entity, it is duplicative to also bring the same claim against individuals in their official capacities, and therefore the individual claims should be dismissed. See, e.g., Hallett v. N.Y. Dep't of Corr. Servs., 109 F. Supp. 2d 190, 199–200 (S.D.N.Y. 2000). Here, Gallagher has brought discrimination and retaliation claims pursuant to the Rehabilitation Act against the Fairfield Board of Education in Counts Three and Four. Accordingly, the Court finds that Gallagher's claims against the individual defendants in their official capacities are duplicative, and therefore grants the defendants' motion to dismiss Counts Three and Four with respect to the individual defendants in both their individual and official capacities.

---

[4] The parties dispute whether employment discrimination claims are actionable under the Rehabilitation Act against individuals in their official capacity for prospective injunctive relief. Compare Henrietta D. v. Bloomberg, 331 F.3d 261, 289 (2d Cir. 2003) ("Neither § 504 nor Title II displays any intent by Congress to bar a suit against state officials in their official capacities for injunctive relief . . . ."), with Lane v. Maryhaven Ctr. of Hope, 944 F. Supp. 158, 163 (E.D.N.Y. 1996) (holding that there is no cause of action under the ADA or Rehabilitation Act for lawsuits brought against employees in their official capacities). Because the Court finds that Gallagher's Rehabilitation Act claims against the individual defendants are duplicative of her claims against the Board, the Court does not need to resolve this dispute.

D. Counts Five and Six: 42 U.S.C. § 1983

In Counts Five and Six, Gallagher claims that the defendants violated her rights to equal protection under the Fourteenth Amendment and her right to be free from retaliation for engaging in free speech under the First Amendment, respectively, as asserted through 42 U.S.C. § 1983.

*1. Count Five: Equal Protection*

Gallagher does not have a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment. First, "disability" is not a protected class under the Equal Protection Clause of the Fourteenth Amendment. See Garrett, 531 U.S. at 366 (applying the rational-basis standard to disability discrimination claims and failure to accommodate claims); see also Kaiser v. Highland Cent. Sch. Dist., No. 1:08-CV-0436, 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008) (finding that a plaintiff asserting an Equal Protection claim under 42 U.S.C. § 1983 based on disability discrimination does not have an actionable claim (citing Price v. City of N.Y., 264 F. App'x 66, 68 (2d Cir. 2008)). Additionally, Gallagher concedes that her "class of one" claim, which is based on her employment in the public sector, is barred by Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008). Accordingly, the defendants' motion to dismiss Count Five is granted.

*2. Count Six: First Amendment Retaliation*

In Count Six, Gallagher brings a claim alleging First Amendment retaliation. To bring a First Amendment retaliation claim, the plaintiff must establish that: "'(1) his [or her] speech addressed a matter of public concern, (2) he [or she] suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action so that it can be said that [plaintiff's] speech was a motivating factor in the determination.'" Barclay v.

Michalsky, 451 F. Supp. 2d 386, 394 (D. Conn. 2006) (quoting Mandell v. Cty. of Suffolk, 316 F.3d 368, 382 (2d Cir.2003)).

Assuming that Gallagher's speech addressed a matter of public concern,[5] the defendants claim that Gallagher has not suffered an adverse employment action and therefore does not have an actionable First Amendment retaliation claim. The Second Circuit has defined an "adverse employment action" as a "materially adverse change in the terms and conditions of employment." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004).

Here, the Court finds that Gallagher has not sufficiently alleged that she suffered an adverse employment action. Gallagher's principal allegation is that she was forced to load and unload art supplies in the contaminated classroom at the beginning and end of the workday. Additionally, Gallagher claims that in response to her complaints about her classroom and the need for better ventilation, the defendants allegedly installed a low-quality air filter in her classroom (that had been removed from another school due to mold problems) and purposely worked on the skylight while Gallagher was in the classroom, releasing "particles and dust" while doing so. However, such minor instances of claimed retaliation do not rise to the level necessary to constitute an adverse employment action. See Bernheim v. Litt, 79 F.3d 318, 327 (2d Cir. 1996) (Jacobs, J., concurring). "Adverse employment actions [typically] include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). The U.S. Court of Appeals for the Second

---

[5] The defendants do not contest whether Gallagher's speech addressed a matter of public concern. Because the Court finds that Gallagher has not suffered an adverse employment action, the Court declines to determine whether Gallagher's speech, in fact, addressed a matter of public concern. See generally Sousa v. Roque, 578 F. 3d 164 (2d Cir. 2009) (discussing the "matter of public concern" standard in a First Amendment retaliation employment case).

Circuit has stated that "[i]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010).

> Thus, . . . in order to prove a claim of First Amendment retaliation in a situation other than the classic examples of discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, plaintiff must show that (1) using an objective standard; (2) the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.

Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002). The alleged instances of retaliation with respect to Gallagher may rise above a "merely discourteous working environment," see id., but are not enough to constitute an adverse employment action. Unlike in Bernheim, where the employment status of the plaintiff/teacher was materially altered (among other things, the plaintiff was reassigned from a out-of-classroom position to an in-classroom position), see Bernheim, 79 F.3d at 325, Gallagher's employment status did not substantially change as a result of her engaging in protected speech and her allegations do not support a finding that her working environment became "unreasonably inferior and adverse when compared to a typical . . . workplace." Additionally, Gallagher claims that the defendants' alleged failure to accommodate her requests constitute an adverse employment action. While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action. Cf. Ragin v. E. Ramapo Cent. Sch. Dist., No. 05 Civ. 6496, 2010 WL 1326779, at *20 (S.D.N.Y. Mar. 31, 2010) (stating that "a failure to provide such an accommodation is not in and of itself an adverse employment

action"). Therefore, the Court finds that Gallagher has not suffered an adverse employment action and the defendants' motion to dismiss her First Amendment retaliation claim is granted.

### 3. *Qualified Immunity*

Even if Gallagher did suffer an adverse employment action, the Court finds that the individual defendants are entitled to qualified immunity from Gallagher's First Amendment retaliation claim. Government officials performing discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known about. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to protect officials when they must make difficult "on-the-job" decisions. See Zieper v. Metzinger, 474 F.3d 60, 71 (2d Cir. 2007). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" by giving "ample room for mistaken judgments." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

In the Second Circuit, the qualified immunity analysis consists of a three-step inquiry examining whether there is an alleged violation of a constitutional right, whether the right was clearly established at the time of the conduct, and-if the right was clearly established-whether the defendants' actions were objectively reasonable. Harhay v. Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003). In the case of a section 1983 First Amendment retaliation claim,

> [t]he relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to "freedom of speech," but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech. Such an inquiry requires that a court define the constitutional right with some specificity. If the right is defined too broadly, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of

virtually unqualified liability simply by alleging violation of extremely abstract rights.

Lewis v. Cowen, 165 F.3d 154, 166–67 (2d Cir. 1999) (ellipses in original).

While allowing an individual to exercise his First Amendment rights without retaliation is a clearly established constitutional right, see Ortiz v. Town of Stratford, No. 3:07-cv-1144, 2008 WL 4630527, at *17 (D. Conn. Oct. 14, 2008) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)), alleging personal involvement by the particular defendants is a prerequisite to liability under a section 1983 claim. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)); Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."). A plaintiff may demonstrate personal involvement for purposes of a § 1983 claim by showing that:

> The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991).

Here, Gallagher contends that she has adequately plead personal involvement of the defendants in Paragraph 54 of her Complaint. Paragraph 54 states: "The individual defendants directly participated in denying plaintiff's request for an accommodation and implementing an

unreasonable accommodation that further jeopardized plaintiff's health." However, Gallagher makes no specific allegations with respect to any of the individual defendants' responsibility or actions. See Zavatsky v. Anderson, 130 F. Supp. 2d 349, 358 (D. Conn. 2001) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." (quoting Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999))). But see Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 255 (2d Cir. 2001) (affirming the trial court's decision that the plaintiff adequately pled personal involvement). Accordingly, the individual defendants are also protected by qualified immunity.

### E. Count Seven: Conn. Gen. Stat. § 31-290a

In Count Seven, Gallagher alleges that she was discriminated against for filing a workers' compensation claim in violation of Conn. Gen. Stat. § 31-290a. Section 31-290a(a) states that an employer shall not "discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him" pursuant to the workers' compensation laws.

First, Gallagher concedes that her claim under section 31-290a is limited to a claim against the Board (not against the Town or individual defendants). In analyzing claims under section 31-290a, courts routinely look to federal employment law for guidance. See Mele v. City of Hartford, 855 A.2d 196, 206 (Conn. 2004). Thus, to make out a prima facie case of retaliation under section 31-290a, the plaintiff must prove: (1) that she engaged in protected activity; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse

action. See id.; see also Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001); Ford v. Blue Cross & Blue Shield of Conn., Inc., 578 A.2d 1054 (Conn. 1990).

It is undisputed that Gallagher engaged in protected activity by filing a workers' compensation claim in December 2007 and that the Board was aware of her claim; however, as the Court previously discussed with respect to Gallagher's First Amendment Retaliation claim, Gallagher has not alleged that the Board took an "adverse action" against her.[6] Accordingly, the defendants' motion to dismiss Count Seven is granted.

### F. Counts Eight and Nine: Negligence

In Counts Eight and Nine, Gallagher alleges negligence pursuant to Conn. Gen. Stat. § 52-557n and negligent infliction of emotional distress, respectively.[7] Gallagher claims that the defendants "had a duty to provide [her] with a safe working environment, to effectively remediate contaminants found in the workplace, and protect her from contaminants being used in the workplace and/or present in the building."

In Count Eight, Gallagher alleges that the defendants were negligent in failing to provide her with a safe working environment, and seeks to hold the Town and Board liable for the negligent acts of its employees. Conn. Gen. Stat. § 52–557n provides that a "political subdivision of the state shall be liable for damages to person or property caused by: (A) the

---

[6] Connecticut courts appear to apply the same standard as the U.S. Court of Appeals for the Second Circuit in determining whether an action constitutes an adverse employment action. See Martin v. Town of Westport, 950 A.2d 19, 25 (Conn. App. Ct. 2008) (defining "adverse employment action" and citing Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)).

[7] Defendants Town of Fairfield and Fairfield Board of Education are the only defendants named in Count Eight. All of the defendants are named in Count Nine.

negligent acts or omissions of such political subdivision." Conn. Gen. Stat. § 52–557n(a)(1)(A).

Under section 52-557n, governmental defendants are entitled to municipal immunity from "negligent acts or omissions which require the exercise of judgment or discretion." Conn. Gen. Stat. § 52–557n(a)(2)(B). The determination of governmental immunity turns on whether the negligent act was ministerial or discretionary. "Generally, liability may attach for a negligently performed ministerial act, but not for a negligently performed governmental or discretionary act." Kolaniak v. Bd. of Educ., 610 A.2d 193, 195 (Conn. App. Ct. 1992). "And although the general rule is that a determination as to whether the actions or omissions of a municipality are discretionary or ministerial is a question of fact for the jury, there are cases where it is apparent from the complaint." Segreto v. City of Bristol, 804 A.2d 928, 934 (Conn. App. Ct. 2002) (internal quotation marks omitted). Here, Gallagher has not alleged that the defendants' failure to provide her with a safe working environment was related to any Town or Board policy. Courts have held that where a municipality's failure to maintain its property in a reasonably safe condition is not related to "some policy or directive in place regarding those duties with which it or its employees had failed to comply," the negligent acts are discretionary, not ministerial. See id. at 936. Accordingly, Gallagher's allegations of negligent conduct by the defendants only constitute allegations of discretionary acts. Therefore, the Town and Board are entitled to governmental immunity pursuant to Conn. Gen. Stat. § 52–557n(a)(2)(B) and the defendants' motion to dismiss Count Eight is granted.

In Count Nine, Gallagher alleges negligent infliction of emotional distress based on the defendants' failure to provide her with a safe working environment and failure to remedy the allegedly hazardous conditions in her classroom. To assert a claim of negligent infliction of

emotional distress in the employment context, the unreasonable conduct at issue must arise during the termination process. See Perodeau v. City of Hartford, 792 A.2d 752, 772 (Conn. 2002); Millspaugh v. Conn. Water Serv., Inc., No. 3:07CV871, 2008 WL 906842, at *4 (D. Conn. Mar. 31, 2008).[8] The Connecticut Workers' Compensation Act, Conn. Gen. Stat. §§ 31-275, 31-284(a), limits a plaintiff's recovery for injuries sustained during and in the course of employment, including emotional distress, to the receipt of workers' compensation benefits. See Driscoll v. Gen. Nutrition Corp., 752 A.2d 1069, 1070–71 (Conn. 2000); see also McClain v. Pfizer, Inc., No. 3:06-cv-1795, 2008 WL 681481, at *8 (D. Conn. Mar. 7, 2008). This bar against a plaintiff's recovery for emotional distress damages only applies if the plaintiff's emotional distress damages arise out of a "personal injury." See Bennett v. Beiersdorf, Inc., 889 F. Supp. 46, 50 (D. Conn. 1995). Here, Gallagher suffered from asthma and related illnesses, both of which are physical injuries. Thus, any emotional distress that she allegedly suffered arose out of a "physical injury" and her exclusive remedy is the Workers' Compensation Act. Accordingly, the defendants' motion to dismiss Nine is granted.

    G.    <u>Count Ten: Conn. Gen. Stat. § 7-465</u>

In Count Ten, Gallagher seeks to hold the Town of Fairfield liable for any damages caused by the negligence of its employees, pursuant to Conn. Gen. Stat. § 7-465. Thus, Count Ten is an indemnification claim for any damages awarded pursuant to Gallagher's negligence

---

[8] Although Gallagher was not terminated, courts have held that allegations of constructive discharge may qualify as "termination." Presley v. Pepperidge Farm, Inc., 356 F. Supp. 2d 109, 140 (D. Conn. 2005); see also Pecoraro v. New Haven Register, 344 F. Supp. 2d 840, 845 (D. Conn. 2004). But cf. Pinckney v. Miss Porter's Sch., Inc., No. CV085009273S, 2009 WL 1175327, at *4–5 (Conn. Super. Ct. Mar. 30, 2009). However, the Court does not need to resolve this issue because Gallagher's claim for negligent infliction of emotional is barred by the Connecticut Workers' Compensation Act.

claims in Counts Eight and Nine. Because the Court has granted the defendants' motion to dismiss both Counts Eight and Nine, Count Ten is dismissed.

      H.      Count Eleven: Intentional Infliction of Emotional Distress

In Count Eleven, Gallagher brings a claim for intentional infliction of emotional distress against the individual defendants.[9]

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ., 757 A.2d 1059, 1063 (Conn. 2000). Whether the defendants' conduct was extreme and outrageous is the initial question for the court to address. See Edwards v. New Opportunities Inc., No. 3:05CV1238, 2007 WL 947996, at *7 (D. Conn. Mar. 26, 2007).

> [I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility, the court is not fact finding, but rather is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress.

Tracy v. New Milford Pub. Sch., 922 A.2d 280, 286 (Conn. App. Ct. 2007) (internal quotations omitted). Only if reasonable minds could disagree does it become an issue for the jury to decide.

---

[9] Gallagher concedes that the Town and Board are entitled to governmental immunity for claims of intentional infliction of emotional distress and therefore is not pursuing claims against those defendants.

See Adams v. Hartford Courant & Tribune Co., No. 303CV0477, 2004 WL 1091728, at *4 (D. Conn. May 14, 2004).

Both federal and state courts in Connecticut have interpreted the qualification of "extreme and outrageous conduct" strictly. See Golnik v. Amato, 299 F. Supp. 2d 8, 15–16 (D. Conn. 2003). Liability can only be imposed if the conduct "exceeds all bounds usually tolerated by decent society" and is "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Buster v. City of Wallingford, 557 F. Supp. 2d 294, 301 (D. Conn. 2008). The suffering must be "so severe that no reasonable person could be expected to endure it." Id. at 302. A "routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior." Edwards, 2007 WL 947996, at *7 (internal quotations omitted). Additionally, "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings" do not reach the standard of offensive conduct. Miner, 126 F. Supp. 2d at 195.

Here, Gallagher claims that, despite knowing of her illness, the defendants intentionally installed a contaminated air filter in her classroom and removed the skylight from the classroom while Gallagher was in the room, knowing that such actions would cause Gallagher emotional distress. At the motion to dismiss stage, it is premature to dismiss these allegations. If discovery produces facts sufficient to prove that the defendants, through their actions, intended to cause Gallagher emotional distress, Gallagher may have an actionable intentional infliction of emotional distress—intentionally exacerbating a person's pre-existing medical condition could constitute extreme or outrageous conduct. Accordingly, the defendants' motion to dismiss Count Eleven is denied.

I.  Count Twelve: Intentional Tort

In Count Twelve, Gallagher alleges that the individual defendants engaged in "wilful or malicious conduct."  However, there is no common law claim for "wilful or malicious conduct" and Gallagher has not alleged any Connecticut statutory violation in Count Twelve.  To the extent Gallagher alleges intentional and wrongful conduct by the defendants, such a claim is duplicative of her intentional infliction of emotional distress claim in Count Eleven.  Accordingly, the defendants' motion to dismiss is granted, without prejudice to Gallagher re-filing an actionable claim.

**III.  Conclusion**

Accordingly, the defendants' motion to dismiss [Dkt. #15] is GRANTED IN PART AND DENIED IN PART.  Gallagher's Rehabilitation Act claims in Counts Three and Four against the Board and Gallagher's intentional infliction of emotional distress claim against the individual defendants in Count Eleven remain.

SO ORDERED this 15th day of August 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**